JUDGE OETKEN  13 CIV 7977

419-12/DPM/MAM
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Petitioner
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Don P. Murnane, Jr.
Manuel A. Molina

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STOLT TANKERS B.V. (f/k/a STOLT-NIELSEN
TRANSPORTATION GROUP B.V.),

                       Petitioner,

   - against -

TDC, L.L.C,

                       Respondent.
------------------------------------------------------------x

13 Civ ____ ( )

PETITION TO COMPEL
ARBITRATION PURSUANT
TO 9 U.S.C. §§ 1-16


RECEIVED NOV -8 2013 U.S.D.C. S.D.N.Y. CASHIERS

      Petitioner, STOLT TANKERS B.V. ("Stolt Tankers") (f/k/a STOLT-NIELSEN TRANSPORTATION GROUP B.V. ("SNTG")), by its attorneys Freehill Hogan & Mahar, LLP, as and for its Petition against Respondent, TDC, L.L.C. ("TDC"), alleges upon information and belief as follows:

### JURISDICTION

    1.   The dispute which is the subject matter of this Petition involves an admiralty or maritime claim within the meaning of Rule 9(h), and the case would be within the admiralty jurisdiction of the United States and of this Honorable Court pursuant to 28 U.S.C. §1333, save for the written agreement to arbitrate hereinafter set forth.

    2.   This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in dispute exceeds $75,000 exclusive of interest and costs.

408466.1

3.      This Petition to compel arbitration is made pursuant to 9 U.S.C. §§ 1-16, as Respondent TDC has violated the parties' written maritime agreement to arbitrate at New York.

## THE PARTIES

4.      Petitioner Stolt Tankers, at all times hereinafter mentioned, was and still is the disponent owner of the M/T STOLT FACTO and a foreign business entity organized and existing under the laws of a foreign country, with an office at care of Stolt-Nielsen USA Inc. ("Stolt USA"), located at 800 Connecticut Avenue, Norwalk, CT 06854.[1]

5.      Respondent TDC, at all times herein mentioned, was and still is a Louisiana limited liability company domiciled in Ruston, Louisiana.

## THE NATURE OF THE PARTIES' DISPUTE

6.      On or about December 22, 2009, SNTG, as disponent Owner, and TDC, as Charterer, entered into a Contract of Affreightment on an amended ASBATANKVOY form (hereinafter the "COA"). (Exhibit A annexed hereto.) The COA was effective from January 1, 2010 to December 31, 2012, and called for the ocean transportation of shipments of Sodium Hydrosulfide ("NaHS") from various ports in the United States Gulf Coast to various ports in Peru and Chile, contemplating one sailing per month over the duration of the contract. (Exhibit A, Clauses 1, 2, 3, 5, 7, 11 and 12.)

### A.  THE ARBITRATION AGREEMENT

7.      The COA also provided for the application of "United States Law" and arbitration of all disputes at New York. Clause 24 of the COA prescribes in relevant part that:

> **24. ARBITRATION:** Any dispute arising from the making, performance or termination of this Charter Party shall be settled in New York. Owner and Charterer each appointing an arbitrator, who shall be a merchant, broker or

---

[1] Stolt USA, at all times hereinafter mentioned, was Petitioner's disclosed corporate agent.

408466.1                                    2

individual experienced in the shipping business; the two thus chosen shall nominate a third arbitrator who shall be an admiralty lawyer. Such arbitration shall be conducted in conformity with the provisions and procedures of the United States Arbitration Act, and a judgment of the court shall be entered upon any award made by said arbitrators. . . . United States Law shall govern this agreement. . . . (Exhibit A; Clause 24.)

8.  Accordingly, pursuant to the unambiguous terms of Clause 24, SNTG and TDC agreed to arbitrate *any* of their disputes arising from the COA at New York and to apply U.S. law.

9.  Subsequently, on or about May 16, 2011, Stolt Tankers and TDC executed "Addendum No. One" to the COA.[2] Addendum No. One "amended and or incorporated into" the COA certain minor administrative provisions, including the identity of the "Owner" to reflect the change in the corporate name of SNTG to Stolt Tankers.[3] Addendum No. One left the New York Arbitration Clause of the COA intact. (Exhibit B annexed hereto.)

10. On or about January 2012, Stolt Tankers and TDC executed "Addendum No. Two" to the COA.[4] (Exhibit C annexed hereto.) Addendum No. Two merely amended Clause 17 ("Freight rates") of the COA and again left intact the New York Arbitration Clause 24.

### B. THE SHIPMENT

11. On or about March 20, 2011, pursuant to the terms and conditions of the COA, TDC loaded onboard the M/T STOLT FACTO, at the port of Houston, Texas, a shipment of 1,440.67 metric tons of NaHS, which Stolt Tankers agreed to transport and deliver to the port of Matarani, Peru. Stolt Tankers issued companion bills of lading to reflect, among other items, the amount of cargo that had been loaded onboard the vessel. (Exhibit D, Tanker Bill of Lading B/L

---

[2] Addendum No. was signed on May 16, 2011, but was facially dated April 27, 2011.

[3] In 2007 SNTG's corporate name had been changed to Stolt Tankers B.V.

[4] Addendum No. Two was signed by TDC on January 12, 2012, and Stolt USA, acting as agent for Stolt Tankers, signed it on January 22, 2012. This Addendum bears the facial date of October 20, 2011.

Nos. 330 and 332B). As reflected by the bill of lading, the NaHS was loaded into vessel tanks Nos. 7S, 9C, 10P.

12. In accordance with the parties' COA, the companion bills of lading expressly provided, in pertinent part, that "[t]his shipment is carried under and pursuant to terms of the Charter 12 22 2009 [December 22, 2009] at Norwalk, CT between STOLT TANKERS B.V. and TDC, LLC . . . and all the terms whatsoever [of] the said Charter, including the arbitration clause . . . apply and govern the rights of the parties concerned in this shipment." (Exhibit D.)

13. The STOLT FACTO sailed from Houston on or about March 20, 2011 for various ports on the West Coast of South America. On or about May 5, 2011, at the port of Matarani, Peru, the vessel commenced cargo pre-discharge operations whereupon the amount of cargo in tank 10P was determined to be short whereas adjacent tank 10C had gained some cargo.

14. Subsequent inspection by the vessel's crew revealed that a leak between tanks 10P and 10C had developed during the voyage, resulting in a comingling of the two cargoes being held in those tanks, namely, TDC's NaHS in 10P and arcol polyol in 10C.

15. Because of the product contamination, the Peruvian consignee refused to discharge the cargo and TDC decided to return the contaminated cargo back to Houston.

### C.  TDC'S $3,638,949.64 CLAIM INCLUDING DISPOSAL COSTS

16. On or about March 2, 2012, Robert Burns, TDC's Director of Logistics & Customer Services, presented to GARD AS ("GARD"), the vessel's Protection and Indemnity Club, an "insurance claim" and provided a detailed itemization of all damages and expenses sustained by TDC stemming from the cargo contamination. (Exhibit E annexed hereto.)

17. Mr. Burns' claim letter meticulously included and itemized the damages TDC claimed it had suffered from the cargo contamination. The itemization included damages

sustained for the loss of value of the cargo, the replacement of cargo, freight for returning the contaminated cargo to Houston and, crucially, the expenses incurred for "the storage, handling ***and disposal*** of this product" as "waste product." (Exhibit E, ¶2; emphasis supplied.)

18.     Mr. Burns' claim letter listed $2,807,034.99 in expenses and costs already incurred and "Estimated Expenses Remaining" of $831,914.65, for a total of ***$3,638,949.64***. This amount expressly included all paid and projected "Product Disposal," "Waste Services" and "Sludge disposal" costs and invoices.

19.     On May 3, 2012, TDC, "as Bill of Lading holder and/or Charterer under COA dated December 22, 2009," demanded New York arbitration against Stolt Tankers/SNTG, claiming that it had sustained damages as a result of the contamination of the shipment of NaHS that had been carried onboard the STOLT FACTO. (Exhibit F annexed hereto.)

### D.  THE TEXAS ACTION

20.     The following day, however, in violation of its agreement with Stolt Tankers/SNTG to arbitrate "any dispute" arising from the COA, and inconsistent with its demand for arbitration the day prior, TDC instituted an action for damages in the United States District Court for the Southern District of Texas, naming as defendants the STOLT FACTO, Stolt Tankers/SNTG, Stolt USA, and Gulf Stolt Ship Management JLT (the vessel's operator). (Declaration of William A. Durham, dated November 7, 2013 ("Durham Decl."), ¶¶1-2; Exhibit 1 annexed thereto.)

21.     Alleging breach of the COA and/or negligence, TDC claimed in its Texas Complaint that it had "sustained damages, as nearly as same can now be estimated, no part of which has been paid although duly demanded, in the presently estimated amount of ***$3,638,949.64***." This amount is, to the penny, precisely the amount (***including disposal costs***)

TDC had claimed in its March 2, 2012 letter to GARD as constituting the full and total amount of damages it sustained as a result of the contamination of the NaSH shipment. (Durham Decl., Exhibit 1, ¶IX; *see also* ¶XI.)

22. The TDC Texas Complaint also unambiguously claimed, *inter alia*, that the shipment of NaHS, which is the subject of the instant Petition, "was delivered short and/or otherwise damaged due to the unseaworthiness of the vessel and/or negligence of the defendants" and that "[u]ltimately, it was determined that the cargo had no salvage value ***and it was disposed of as waste***." (Durham Decl., Exhibit 1, ¶V; emphasis supplied.)

23. The damages complained of by TDC in its Texas suit included, to the exact penny, the expenses TDC had incurred (and those it estimated would be further incurred) in ***disposing of*** the contaminated NaHS as "waste product," as set forth in Mr. Burns' March 2, 2012 claim letter. (*See* Exhibit E annexed hereto.)

24. In response to TDC's demand for New York arbitration, Stolt Tankers/SNTG appointed its own arbitrator per telefax dated August 23, 2012. (Exhibit G annexed hereto.)

25. On October 2, 2012, TDC filed in the Texas action a "Joint Motion to Dismiss in Favor of Arbitration" ("Joint Motion"). (Durham Decl., Exhibit 3.) TDC expressly represented to the Texas federal District Court that: "the parties agree that the claims asserted by Plaintiff TDC are subject to a ***valid and mandatory arbitration agreement***." (Durham Decl., Exhibit 3; emphasis supplied.) TDC also specifically requested that the Court issue an order dismissing "TDC's claims against the M/T STOLT FACTO, *in rem*, et al. ***in favor of New York arbitration***." (Durham Decl., Exhibit 3; emphasis supplied.)

26. The Joint Motion filed in Texas included the following representations by TDC:
- "The parties' contract of affreightment and the applicable bills of lading provide for resolution of disputes in arbitration in New York."

- The COA's arbitration clause is "broad" covering "arbitration of any dispute arising out of the contract in question."

- "[T]he contract of affreightment and the applicable bills of lading issued for the cargo contain valid and enforceable arbitration provisions."

- "The dispute between TDC and the M/T STOLT FALCO, *in rem*, and the *in personam* defendants falls within the scope of the parties' contract of affreightment and/or bills of lading."

(Durham Decl., Ex. 3 at ¶¶3-4, 7 and 8.)

27.     On October 3, 2012, the Texas federal District Court granted the Joint Motion directing that "*[a]ll claims* against the M/T STOLT FACTO, *in rem*, and the defendants, *in personam*, are dismissed without prejudice, *in favor of arbitration*." (Durham Decl., Exhibit 3; emphasis supplied.) Accordingly, the "disposal costs" element of TDC's claim, which was part and parcel of its suit in Texas seeking recovery of damages in the sum of $3,638,949.64, was dismissed and referred to New York arbitration pursuant to the Texas court order and in compliance with the parties' agreement to arbitrate.

28.     As per the October 3, 2012 Order, the parties proceeded to arbitration in New York, with the two arbitrators appointed by the parties subsequently selecting the Chair to constitute the full Panel required by Clause 24 of the COA.[5]

29.     On September 12, 2013, the constituted Panel and the parties scheduled a preliminary telephone conference for October 9, 2013 (subsequently rescheduled for October 16) to discuss issues relating to the parties' claims and counterclaims as well as the conduct of the arbitration proceeding. (Exhibit H annexed hereto.)

---

[5] The arbitrator initially named by TDC recused himself from the arbitration proceedings and TDC went on to appoint his replacement.

408466.1                                                      7

### E. THE RECENT LOUISIANA LAWSUIT GIVING RISE TO THIS PETITION

30. On October 10, 2013, essentially on the eve of the Panel's scheduled preliminary telephone conference, TDC commenced an entirely new lawsuit in the United States District Court for the Middle District of Louisiana. (Exhibit I annexed hereto.) This lawsuit not only named as defendants the very same Stolt corporate entity defendants that had been identified in the Texas federal action, to wit, SNTG, Stolt Tankers and Stolt USA, but it also targeted two individual Stolt USA employees.

31. The Complaint sought recovery of TDC's "disposal costs" alone and asserted causes of action under federal and state law notwithstanding that the "disposal costs" portion of the TDC claim had been submitted to arbitration.

32. Less than two weeks after having instituted the Louisiana action, TDC, on October 23, amended its Complaint. (Exhibit J annexed hereto.) The Amended Complaint, save for the removal of Stolt USA and its employees as named defendants and the inclusion of additional corporate information concerning TDC, essentially repeats the allegations and causes of action asserted in the original Complaint.

33. On its face, the Louisiana Amended Complaint is a transparent and ultimately futile effort by TDC to forum shop the "disposal costs" component of its underlying cargo contamination claim so as to avoid New York arbitration. TDC seeks in its contrived Louisiana lawsuit to sever that portion of its damages claim that relates to disposal costs which arise directly from, and are part and parcel of, the cargo contamination. TDC attempts this maneuver (a) despite having previously represented to the Texas federal District Court that such disposal costs were within the scope of the COA's "broad" arbitration clause, and (b) in direct violation

of the Texas federal court order referring the disposal costs portion of the claim to arbitration at New York.

34. TDC seeks in the Louisiana action to distance itself from its binding admissions in the Texas federal District Court. Its 20-page Amended Complaint strains to mischaracterize a cargo contamination claim as some unique species of "pollution" claim which falls out of the scope of the arbitration clause.

35. TDC also falsely alleges in the Louisiana federal action that an oral contract was entered into by and between Stolt USA employees (acting as disclosed agents for Stolt Tankers/SNTG) and TDC at an October 2011 meeting whereby Stolt Tankers purportedly volunteered to reimburse TDC for the expenses it incurred in cleaning up and disposing of the contaminated NaHS cargo. (Exhibit J at ¶¶48-96.)

36. Petitioner Stolt Tankers categorically denies that any such oral contract was ever made with TDC concerning reimbursement of TDC's clean up and disposal expenses. Further, such a purported oral contract is unenforceable under Clause 39A of the COA which explicitly prescribes that any modifications and amendments to the COA must be "in writing" and signed by the parties to be binding and effective.

37. For purposes of this Petition, TDC's (false) allegations are irrelevant. Even assuming *arguendo* that the allegations of the Louisiana Amended Complaint are accurate (they are not), the validity and enforcement of the purported oral agreement is also an issue for the arbitrators to decide in light of the "any disputes" language of the arbitration clause and the parties' rights under Clause 39A of the COA.

38. All of TDC's claims for disposal costs brought in Louisiana are subject to New York arbitration despite TDC's contorted pleading stratagem and blatant forum shopping.

39.     First, as more fully set forth in the accompanying Memorandum of Law, TDC has waived any argument and/or is estopped from alleging that its claims for disposal costs are outside the scope of an arbitration clause that TDC has itself admitted is a "broad" clause. TDC's own pleadings in the Texas action confirm that: (a) the disposal costs portion of its claim was subject to arbitration, and (b) TDC requested the Texas federal District Court to refer the disposal costs component of its claim to arbitration, and (c) TDC, in turn, obtained a court order directing that the parties arbitrate **_all_** of their claims at New York, including the disposal costs.

40.     By commencing the Louisiana action, TDC is in breach of the parties' arbitration agreement and in violation of the Texas order which it sought and obtained. Federal law does not condone such transparent forum shopping and manipulation of the federal court system in an effort to avoid arbitration.

41.     Second, even if this Court were to ignore TDC's admissions and actions in the Texas federal litigation, under well-settled principles of law, and as more fully set forth in the accompanying Memorandum of Law, TDC is required to arbitrate the disposal costs portion of its claim. The decisional law is clear: a party may not avoid its contractual obligation to arbitrate by parsing damages components of a single claim through the facile expedient of artful pleading. The disposal expenses are part and parcel of the cargo contamination claim and arise directly from the COA. Until only recently, they had been treated as such by TDC, and the disposal costs component of the arbitral cargo contamination claim cannot now be carved out of the parties' agreement to arbitrate.

42.     Third, federal policy strongly favors the enforcement of arbitration agreements, especially when an arbitration clause, such as the one at issue here, is broadly worded to cover

"***any dispute*** arising from the making, performance or termination of this [COA]." (Exhibit A, Clause 24; emphasis supplied.)

43. Indeed, such is the strong federal policy in favor of arbitration that even if, assuming *arguendo*, this Court were to entertain any doubts concerning the arbitrability of the disposal costs component of TDC's cargo contamination claim, well-established law requires that the Court refer that aspect of the claim to arbitration.

44. The TDC Louisiana suit is a deliberate attempt to evade arbitration, and therefore, threatens the strong federal public policy that favors the liberal enforcement of arbitration agreements.

45. The commencement of the Louisiana suit has resulted in the Panel of New York arbitrators necessarily adjourning the preliminary conference while TDC's filing of the Louisiana federal action is addressed judicially. (Exhibit K annexed hereto.)

46. TDC's breach of its contractual obligations to arbitrate in New York through the commencement of the Louisiana proceedings has caused Stolt Tankers to incur additional costs and attorneys' fees in responding to the breach. Stolt Tankers hereby expressly reserves its rights to seek before the New York Panel an award of legal fees and costs against TDC in responding to the breach.

47. No previous application has been made to this Court or any other Court or Judge, for the order and relief sought herein.

WHEREFORE, Petitioner prays in accordance with the provisions of the Federal Arbitration Act, that this Honorable Court enter an Order:

(1) directing that Respondent TDC proceed with arbitration in accordance with the Contract of Affreightment, dated December 22, 2009, and submit

any dispute, including those disputes alleged in the Louisiana action, to arbitration at New York;

(2) directing that TDC take all steps necessary forthwith to cause the pending Louisiana action to be withdrawn and dismissed, or alternatively, that TDC stay that action pending the outcome of the New York arbitration;

(3) awarding Petitioner such other and further or different relief as the Court may deem just and proper in the circumstances.

Dated: New York, New York
November 8, 2013

                FREEHILL HOGAN & MAHAR, LLP
                Attorneys for Petitioner

            By: _____
                Don P. Murnane, Jr.
                Manuel A. Molina
                80 Pine Street
                New York, NY  10005
                (212) 425-1900

TO: **<u>VIA FEDERAL EXPRESS</u>**

TDC, LLC
919 Milam Street, Suite 2100
Houston, Texas 77002

Attn: Mr. Robert Burns

Respondent's Attorneys:

REITLER KAILAS & ROSENBLATT LLC
885 Third Avenue, 20th Floor
New York, NY 10022

Attn: Leo Kailas, Esq.,

DEGRAVELLES, PALMINTIER, HOLTHAUS & FRUGÉ, LLP
618 Main Street
Baton Rouge, Louisiana 70801

Attn: C. Frank Holthaus, Esq.,; and

STRASBURGER & PRICE, LLP
2 Houston Center,
909 Fannin Street, Suite 2300
Houston, Texas 77010

Attn: William Mahley, Esq.